**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **BULLETPROOF PROPERTY MANAGEMENT LLC,**<br><br>                 **Plaintiff,**<br><br>     **v.**<br><br>**TESLA, INC.; JOHN DOES Nos. 1-20, unknown persons,**<br><br>                 **Defendants.** | **Case No. 1:25-cv-665-ADA**<br><br>**Public Version** |

**PLAINTIFF BULLETPROOF PROPERTY MANAGEMENT LLC'S OPPOSITION TO DEFENDANT TESLA, INC.'S MOTION TO TRANSFER VENUE**

Dated: January 9, 2026

Respectfully submitted,

PATRICK | DOERR LLP

By:    */s/ Michael S. Marron*

Michael S. Marron (Admitted *pro hac vice*)
NY State Bar No. 5146352
michael.marron@patrickdoerr.com
1501 Broadway, Suite 2310
New York, New York 10036
Telephone: (212) 680-4052

Buether Joe & Counselors, LLC

Christopher M. Joe
State Bar No. 00787770
Chris.Joe@BJCIPLaw.com

1700 Pacific Avenue
Suite 4750
Dallas, Texas 75201
Telephone:    (214) 466-1272
Facsimile:    (214) 635-1828

*Attorneys for Plaintiff Bulletproof Property Management LLC*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES .................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........................................... 2

ARGUMENT ...................................................................................................................... 6

    I. The Relative Ease of Access to Sources of Proof Is Neutral Since Tesla's Data Is
    Admittedly Equally Accessible from This District ...................................................... 8

    II. Factor Two (2) Is Neutral Because Tesla Has Not Shown That Any Non-Party Witness
    Would Be Unwilling to Testify .................................................................................... 9

    III. The Convenience of Witnesses Weighs Against Transfer ................................... 10

    IV. Factor Four (4) Weighs Against Transfer as Tesla Has Significantly Greater Resources
    Than Plaintiff and Accordingly a Trial in NDCA Would Be More Burdensome on Plaintiff . 12

    V. The Administrative Difficulties Flowing from Court Congestion Weigh Against
    Transfer ...................................................................................................................... 12

    VI. WDTX Has a Stronger Local Interest and Thus This Factor Weighs Against Transfer .... 13

CONCLUSION .................................................................................................................. 15

CERTIFICATE OF SERVICE ............................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
    571 U.S. 49 (2013) ................................................................................................ 8

*Auto-Dril, Inc. v. Pason Sys. USA Corp.*,
    2015 WL 12780768 (W.D. Tex. May 22, 2015) ................................................ 14

*Def. Distributed v. Bruck*,
    30 F.4th 414 (5th Cir. 2022) ................................................................................ 7

*Emp'rs. Ins. of Wausau v. Fox Entm't Grp.*,
    522 F.3d 271 (2d Cir. 2008) ............................................................................... 12

*In re Apple Inc.*,
    979 F.3d 1332 (Fed. Cir. 2020) ........................................................................... 8

*In re Chamber of Commerce of U.S.*,
    105 F.4th 297 (5th Cir. 2024) ................................................................. 8, 10, 14

*In re Clarke*,
    94 F.4th 502 (5th Cir. 2024) ............................................... 1, 2, 7, 12, 14, 15

*In re Databricks, Inc.*,
    2025 WL 685916 (Fed. Cir. Mar. 4, 2025) .......................................................... 8

*In re Haptic, Inc.*,
    2024 WL 3159288 (Fed. Cir. June 25, 2024) ...................................................... 9

*In re Honeywell Int'l Inc.*,
    2024 WL 302397 (Fed. Cir. Jan. 26, 2024) ....................................................... 12

*In re Hulu, LLC*,
    2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ...................................................... 13

*In re Media Matters for Am.*,
    143 F.4th 631 (5th Cir. 2025) ............................................................................ 13

*In re Planned Parenthood Fed'n of Am., Inc.*,
    52 F.4th 625 (5th Cir. 2022) ................................................................................ 7

*In re Qualcomm Inc.*,
    2025 WL 1743025 (Fed. Cir. June 24, 2025) .................................................... 10

iii

*In re TikTok, Inc.*,
    85 F.4th 352 (5th Cir. 2023) .................................................................... 1, 2, 8, 10, 11

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .................................................................................. 7, 10

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*,
    2009 WL 2634860 (N.D. Tex. Aug. 26, 2009) ............................................................ 14

*McNew v. C.R. Bard, Inc.*,
    2020 WL 759299 (N.D. Tex. Feb. 14, 2020) ............................................................... 14

*Parsons v. Chesapeake & Ohio Ry. Co.*,
    375 U.S. 71 (1963) ....................................................................................................... 13

*Runkle v. Texas*,
    2016 WL 8672687 (W.D. Tex. Feb. 26, 2016) ............................................................ 12

*S.M.R. Innovations LTD v. Apple Inc.*,
    756 F. Supp. 3d 453 (W.D. Tex. 2024) ................................................................. 11, 14

*SITO Mobile R&D IP v. Hulu, LLC*,
    2021 WL 1166772 (W.D. Tex. Mar. 24, 2021) ........................................................... 13

*Vervain, LLC v. Kingston Tech. Co.*,
    No. 1:24-cv-00254-ADA, ECF No. 56 (W.D. Tex. Jan. 28, 2025) ............................... 9

Plaintiff Bulletproof Property Management LLC ("Bulletproof"), by and through its undersigned counsel, hereby respectfully submits its Opposition to Defendant Tesla, Inc.'s ("Tesla") Motion to Transfer Venue Under 28 U.S.C. § 1404(a) ("Motion").

## INTRODUCTION

Tesla's Motion evades and minimizes pertinent facts, ignores recent binding Fifth Circuit law, and misapprehends the older caselaw that it does cite. Although Tesla attempts to understate it, Plaintiff's sole owner, principal, and only witness is Texas citizen Bennet Langlotz, who lives 215 miles from the Austin courthouse and intends to commute by motor vehicle to trial. By contrast, Mr. Langlotz lives 1,720 miles from the San Francisco courthouse and would need to fly to proceedings there, making WDTX much more convenient. Additionally, Tesla ignores several of its own potential witnesses located in this District, and its Motion lists six ███████████ witnesses in NDCA despite the fact that most of them would not testify. Furthermore, the Motion fails to address Tesla's significant connections to this District: Tesla received ████████ tax incentives to move its global headquarters to Austin; reincorporated in Texas to take advantage of local benefits; manufactured ███████████ containing the infringing technology in this District; and has employed ████████████████ in WDTX who continue to manufacture vehicles containing the technology that infringes the patents at issue in this lawsuit.

Turning to the law, in an arguable dereliction of its duty of candor, Tesla's Motion fails to even cite directly apposite, recent Fifth Circuit cases such as *In re TikTok, Inc.*, 85 F.4th 352 (5th Cir. 2023) and *In re Clarke*, 94 F.4th 502 (5th Cir. 2024). These omissions directly led to misstatements of law in the Motion, as Tesla argues that a non-party witness "is presumed to be unwilling [to testify] and considered under the compulsory process factor," Mot. at 8–9 (cleaned up), whereas the Fifth Circuit expressly held in *TikTok* that this factor "receives less weight when

1

it has not been alleged or shown that any witness would be unwilling to testify," 85 F.4th at 360. In a similar vein, when discussing court congestion, Tesla contends that the "Federal Circuit has observed that this factor is neutral between NDCA and this District," but the 2021 case it cites actually compared WDTX with the *Central* District of California. Mot. at 12.

Analyzing the *actual* law in conjunction with the totality of pertinent facts, it becomes clear that the § 1404(a) factors either disfavor transfer or are neutral, because WDTX is in fact the more appropriate forum. And Tesla does not come close to meeting its burden of showing that a transfer to NDCA will cause a "*significant*" "marginal gain in convenience" that "will *actually* materialize in the transferee venue." *In re Clarke*, 94 F.4th at 508. The Court should thus deny the Motion.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Bulletproof is a Wyoming limited liability company that ███████████ ████████████████████████████████████████████████████████████. Decl. of Bennet Langlotz ("Langlotz Decl.") ¶¶ 3–4. Since its inception, Bennet Langlotz has been Bulletproof's sole owner and principal and the only individual with authority to bind it. *Id.* ¶ 3. Mr. Langlotz lives ████████████ approximately 215 miles from the federal courthouse in Austin. *Id.* ¶¶ 2, 5. He states that he would commute via motor vehicle to a deposition or trial in this action in Austin, which would take approximately 3 hours and 15 minutes each way. *Id.* ¶¶ 5, 7. By contrast, his home is approximately 1,720 miles from the NDCA federal courthouse in San Francisco, and attending a deposition or trial there would require a nearly 4 hour flight from Dallas to San Francisco, trips to and from the airport each way, and overnight hotel accommodations for the duration of his stay. *Id.* ¶ 6. This would be substantially more burdensome than WDTX, including because neither he nor Bulletproof have significant financial means. *Id.* ¶¶ 4–7.

In this action, Bulletproof alleges that Tesla has infringed seven of its patents through use

of the AutoShift functionality in Tesla's vehicles. *See* ECF No. 18. The operative, Amended Complaint maintains claims that Tesla indirectly and willfully infringed one of the at-issue patents, *see id.* ¶¶ 29–35, 39–65, and the parties have agreed to allow Bulletproof to conduct fact discovery on indirect and willful infringement claims related to the other six patents, *see* ECF No. 22. On July 21, 2025, Tesla filed the instant Motion to Transfer Venue and the parties subsequently conducted venue discovery, which included interrogatories, document productions, and depositions of Mr. Langlotz and two Tesla corporate witnesses, ██████████████████████ ██████ *See* Decl. of Michael S. Marron, Esq. ("Marron Decl.") Ex. 1 ("██████ Depo"); *id.* Ex. 2 ("██████ Depo").



Tesla's Motion primarily argues that the "convenience of the witnesses 'is the single most important factor' and it strongly favors transfer." Mot. at 6. It "identified" six ██████████ ████████████████████████████████████████████████████████████ ████████████████████ *Id.* at 2–3. The Motion further contends: "Tesla expects some of these individuals will be its witnesses at trial and ████████████ NDCA is fundamental to this analysis. Certainly, litigating in WDTX would pose significant cost and inconvenience for any Tesla employee who must travel to WDTX." *Id.* at 7 (citation omitted). However, subsequent discovery shows that ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████. *See* Marron Decl. ¶ 4 & Ex. 3. Tesla's corporate deponent confirmed that Tesla paid for these trips to Austin and has the resources to cover it. ██████████████ at 43:14–23, 50:6–15.

Moreover, Tesla's Motion twice states that the "relevant finance witnesses are *likely* to be based in NDCA." Mot. at 6 (emphasis added); *accord id.* at 3 (same). ████████████████ ████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████ and that he did not search for additional

financial and business operations personnel who have knowledge related to the sale of Tesla's

vehicles. *Id.* at 29:14–30:6. ████████ was shown two Austin, Texas employees ███████████

████████████████████████████████ who are also listed as part of the

financial and business operations department, and █████████ admitted "it's a possibility" that

they have knowledge related to the sales of Tesla's vehicles. *Id.* at 30:7–33:6; Marron Decl. ¶ 6.

Additionally, Tesla's Motion does not argue that any relevant legal witnesses are located

in NDCA. Tesla's corporate deponent, ███████████ stated that he did not look into the identities

of Tesla legal employee who might have information relevant to this action. ███████████████

███████████████████████████████████████ works in Texas,

out of the Austin office. █████████████████████ Marron Decl. ¶ 6.

Turning to factor two, Tesla argues that the "availability of compulsory process favors

transfer" because it "identified" one "former employee who ███████████████████████

███████████████████████████████████████████████

████████ Mot. at 8. The Motion does not aver, however, that █████████████ is unwilling to

testify in this action, and █████████ confirmed at his deposition that Tesla does not know

whether ████████████ is unwilling to testify. *See* Mot. at 8–9; █████████████████████

Next, Tesla contends that factor three, the "relative ease of access to sources of proof[,]

favors transfer" because "Tesla's relevant documents █████████████████████████████

███████████████████████████████████████████████

████.” Mot. at 9. The Motion further asserts that "[a]lthough some records may be electronically accessible, ██████████████████████████████████████████████ ██████████████████ physically located in NDCA." *Id.* However, ████████ testimony demonstrates that a Tesla employee "allowed" or "authorized" to access the electronic documents relevant to this action would have the exact "same access" in Tesla's Austin office as its Palo Alto office. ██████████████████████████ And the only documents or sources of proof "physically present" in NDCA ████████ *id.* at 64:2–10, which are electronically accessible.

As to factor four, "all other practical problems that make trial of a case easy, expeditious and inexpensive," Tesla asserts with minimal argumentation that "[t]his factor is neutral" since there are no "practical problems" and "Tesla moved expeditiously" to file the Motion. Mot. at 11.

Regarding factor five, Tesla asserts that the "public interest factor weighing administrative difficulties flowing from court congestion is neutral." Mot. at 12. It cites a 2021 opinion from the Federal Circuit which "observed that this factor is neutral between NDCA and this District, 'considering the close similarity of cases per judgeship and average time to trial of the two forums.'" *Id.* The Motion does not provide any updated statistics from more recent years. *See id.*

Tesla argues that factor six, "the local interest in having localized interests decided at home," "strongly favors transfer." Mot. at 11–12. ████████████████████████████████

████████████████████████████████████████████████████████

████ *Id.* at 11. The Motion further emphasizes that "NDCA not only has a stronger local interest because the events forming the basis for the alleged infringement all occurred there, but it also has an interest in protecting the work and reputation of ████████████████████████████████

████ *Id.* Tesla concludes that "this District has no interest in this action." *Id.*

However, the Motion ignores significant connections between and among Tesla, WDTX,

and this action. Tesla concedes in its Motion that it "moved its corporate headquarters to Austin, Texas in 2021," but even that statement does not tell the whole story. Mot. at 2. In response to an interrogatory regarding tax breaks for locating its facilities in this District, "Tesla estimates it has received ███████████ tax incentives." Marron Decl. Ex. 4 at 14–15. In 2024, Tesla reincorporated its corporate entity in Texas, saving $250,000 per year in state fees. *Id.* Ex. 5. In convincing its shareholders to vote to reincorporate in Texas, Tesla emphasized:

- Our global headquarters—and future—are in Texas.
- Our largest manufacturing facility—Gigafactory Texas—is based there and we are continuing to invest in the expansion of our campus, which we believe is the second-largest building by volume in the world.
- We have thousands of employees in Travis County, Texas.
- Reincorporating in Texas builds on Tesla's relationships with the state and local communities.
  * * *
- The Texas legal regime is strong, fair, and more appropriate to our mission.
- The state has invested in a specialty business court to handle complex commercial matters.

*Id.* Ex. 6 at 6. Additionally, the Motion did not explain that, *in Austin*, Tesla manufactures ████ ███████████ vehicles containing the at-issue AutoShift feature. Tesla has manufactured—in Austin, Texas—███████████████████████████ vehicles that have the infringing AutoShift feature. Marron Decl. ¶ 7. ███████████████████ employees go to work at the Austin, Texas Gigafactory every day in this District making vehicles with AutoShift that infringe upon the at-issue patents. ██████ Depo. Tr. at 14:12–15:5, 49:9–13.

Finally, the Motion correctly states that factors seven and eight are neutral. *See* Mot. at 12.

## ARGUMENT

The party who seeks to transfer an action pursuant to 28 U.S.C. § 1404(a) has the burden to "adduce evidence and arguments that clearly establish good cause for transfer based on

convenience and justice." *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022). "At minimum, showing 'good cause' requires the movant 'clearly [to] demonstrate' that its chosen venue is 'clearly more convenient.'" *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) (quoting *Def. Distributed*, 30 F.4th at 433). That is, "a movant must show '(1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *Id.* at 508. Importantly, it is insufficient for the movant to merely show that its alternative forum "is more likely than not to be more convenient." *Def. Distributed*, 30 F.4th at 433.

Because this case "might have been brought" in NDCA, the Court must weigh several private and public interest factors "to determine whether the destination venue is 'clearly more convenient than the venue chosen by the plaintiff.'" *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)). "The private-interest factors are:

> (1) the relative ease of access to sources of proof;
> (2) the availability of compulsory process to secure the attendance of witnesses
> (3) the cost of attendance for willing witnesses; and
> (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.
>
> The public-interest factors are:
>
> (5) the administrative difficulties flowing from court congestion;
> (6) the local interest in having localized interests decided at home;
> (7) the familiarity of the forum with the law that will govern the case; and
> (8) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law."[1]

*In re Clarke*, 94 F.4th at 509 (cleaned up). Notably, in analyzing these factors, the Court "'must also give some weight to [a] plaintiff['s] choice of forum' and his role as master of the complaint."

---

[1] The parties agree that factors seven (7) and eight (8) are neutral. *See* Mot. at 12.

*Id.* at 515–16 (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 n.6 (2013)). Moreover, "[c]ourts must not lose sight of the convenience of *parties* when analyzing each factor." *In re Chamber of Commerce of U.S.*, 105 F.4th 297, 306 (5th Cir. 2024).

**I. The Relative Ease of Access to Sources of Proof Is Neutral Since Tesla's Data Is Admittedly Equally Accessible from This District**

"The first factor focuses on the location of documents and physical evidence relating to the [case]. The question is *relative* ease of access, not *absolute* ease of access." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (internal quotation marks and citations deleted). Tesla correctly recites caselaw stating that, typically, in "'patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.'" Mot. at 9 (quoting *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020)). However, where "the vast majority of the evidence is electronic, and therefore equally accessible in either forum, this factor bears less strongly on the transfer analysis." *In re TikTok*, 85 F.4th at 358–59 (cleaned up); *accord In re Databricks, Inc.*, 2025 WL 685916, at *1 (Fed. Cir. Mar. 4, 2025) ("The court also reasonably declined to assign significant weight to the . . . sources of proof factor[] given [movant]'s failure to identify . . . any source of proof that was not also readily accessible from EDTX.").

Here, the Court should find that this factor is neutral because Tesla's deponent admitted that all relevant documents are equally accessible in this District. Indeed, any Tesla employee "allowed" or "authorized" to access the electronic documents relevant to this action would have the exact "same access" in Tesla's Austin office as its Palo Alto office. ███████████████████

███ Moreover, the only "physically present" sources of proof in NDCA ███████████ *id* 64:2–10, which themselves house the electronic information. Tesla has not given any indication that it needs to bring ███████ to Court or use them in this action, meaning practically the entire

corpus of evidence is electronic and thus the *relative* ease of access should be considered equal.

To be sure, this is not a situation like the one recently addressed by the Federal Circuit in the *Haptic* case, where movant defendant "Apple submitted sworn declarations attesting to the fact that [relevant] information was restricted on a need-to-know basis to Apple employees located in NDCA and areas outside WDTX." *In re Haptic, Inc.*, 2024 WL 3159288, at *1 (Fed. Cir. June 25, 2024). Rather, any Tesla employee with the correct permissions or authorizations would have the "same access" to the documents in Austin just as if they were in Palo Alto. ████ Depo Tr. at 60:19–64:1. Thus, Tesla is incorrect that "known sources of proof are clearly more conveniently accessed in NDCA." Mot. at 10. The Court should accordingly find that this factor is neutral.

## II. Factor Two (2) Is Neutral Because Tesla Has Not Shown That Any Non-Party Witness Would Be Unwilling to Testify

"This factor favors transfer where non-party witnesses are outside of the district's subpoena power and a proper venue that has subpoena power is available." *Vervain, LLC v. Kingston Tech. Co.*, No. 1:24-cv-00254-ADA, ECF No. 56 at 8 (W.D. Tex. Jan. 28, 2025) (Albright, J.) (citing *In re TikTok*, 85 F.4th at 360). "But this factor 'receives less weight when it has not been alleged or shown that any witness would be unwilling to testify.'" *Id.* Tesla's Motion simply does not allege or show any potential witness who is not willing to testify in this action. *See* Mot. at 8–9. In fact, Tesla's deponent, ████, confirmed he does not know whether the one non-party witness Tesla proffered in its Motion—████—would be unwilling to testify. *See* Mot. at 8; ████ at 35:7–20. Thus, as in *Vervain*, "neither party has alleged, much less shown, that a non-party witness is unwilling to testify. Because the parties have not taken that extra step, the Court" should "find[] that this factor is neutral." No. 1:24-cv-00254-ADA, ECF No. 56 at 10. Indeed, the Federal Circuit in 2025 affirmed this Court's "analysis of the compulsory process factor" where the movants "failed to show that any of the[] potential witnesses are

unwilling to testify." *In re Qualcomm Inc.*, 2025 WL 1743025, at *2 (Fed. Cir. June 24, 2025) (per curiam). And Tesla's argument to the contrary relies upon older caselaw that predates, and contradicts, the Fifth Circuit's 2023 statement in *TikTok* that this factor "receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *In re TikTok*, 85 F.4th at 360; *see* Mot. at 8–9 (arguing based on pre-*TikTok* law that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor" (cleaned up)). Accordingly, factor two (2) is neutral.

**III. The Convenience of Witnesses Weighs Against Transfer**

The third factor analyzes "the cost of attendance for willing witnesses." *In re Chamber of Commerce*, 105 F.4th at 304. The Fifth Circuit "uses a '100-mile thresh-old' in assessing this factor. 'When the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TikTok*, 85 F.4th at 360 (citations omitted) (quoting *In re Volkswagen*, 545 F.3d at 317). The Fifth Circuit further emphasizes that "[w]itnesses also suffer 'personal costs associated with being away from work, family, and community' when they testify far from home." *Id.*

Although Tesla's Motion attempts to downplay it, WDTX is much more convenient for the most important witness, Plaintiff's sole owner and principal, Bennet Langlotz. *See* Langlotz Decl. ¶ 3. As discussed above, Mr. Langlotz is a Texas resident who lives approximately 215 miles from this Courthouse and intends to drive to and from trial. *Id.* ¶¶ 2, 5, 7. By contrast, the NDCA courthouse is 1,720 miles away from his home. *Id.* ¶ 6. If trial (or depositions) were held in NDCA, Mr. Langlotz would require a nearly 4 hour flight from Dallas to San Francisco, trips to and from the airport each way, and overnight hotel accommodations for the duration of his stay. *Id.* He

would thus "suffer 'personal costs associated with being away from work, family, and community,'" *In re TikTok*, 85 F.4th at 360, and it bears emphasis that ███████████ ███████████████████████████████████████ Langlotz Decl. ¶ 4. They also have very little connection to NDCA, ████████████████████████████ *Id.* ¶ 7.

Moreover, Bulletproof was able to identify Tesla witnesses located in this very District. As explained above, ██████████████████████████████████ in Finance at Tesla in Austin who could testify regarding sales of Tesla's vehicles. *See supra* Relevant Factual and Procedural Background. There is also a Tesla legal employee ██████████████████ who works in this District and could testify, which is important because willfulness is at issue. *Cf. S.M.R. Innovations LTD v. Apple Inc.*, 756 F. Supp. 3d 453, 467 (W.D. Tex. 2024) (Albright, J.) (noting "IP attorneys may potentially be key witnesses for this litigation"). Notably, Tesla did not itself identify any relevant legal employees as potential witnesses in NDCA.

To be sure, the only witnesses from NDCA who are necessary to the trial are the ███ ███████████████████████████████████████ Mot. at 2–3, 6. While Tesla lists the name of six ████████████ it concedes that only "*some* of these individuals will be its witnesses at trial." *Id.* at 7 (emphasis added). Considering that cumulative testimony is disfavored and unnecessary, it seems likely that only one or two of these witnesses will actually testify at trial. The first witness listed, ████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████ *See* Marron Decl. Ex. 3. The second witness listed, ██████████████████ ████████████████████████ *See id.* Given their extensive travels to Austin, it does not appear they would be greatly inconvenienced by one more trip to testify at trial.

Thus, WDTX is much more convenient for the Plaintiff's sole witness, and Bulletproof has identified three Tesla employees in this District who could testify.[2] By contrast, one or two ███ ████████ who frequently travel to Austin might be required to take one more trip from NDCA to this District. In sum, WDTX is more convenient for the Plaintiff and the majority of witnesses.

## IV. Factor Four (4) Weighs Against Transfer as Tesla Has Significantly Greater Resources Than Plaintiff and Accordingly a Trial in NDCA Would Be More Burdensome on Plaintiff

Factor four (4) analyzes "all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Clarke*, 94 F.4th at 509. In *Runkle v. Texas*, the plaintiff "argue[d] that the fact that he is located in Austin should weigh heavily against transfer. He maintain[ed] he has fewer monetary resources than the defendants and the relative means of the parties should be considered in evaluating transfer." 2016 WL 8672687, at *5 (W.D. Tex. Feb. 26, 2016). Judge Pitman "agree[d] this factor does weigh against transfer of this action." *Id.* (citing *Emp'rs. Ins. of Wausau v. Fox Entm't Grp.*, 522 F.3d 271, 275 (2d Cir. 2008)). Here, too, the Court should find that the relative means of the parties disfavors transfer. Tesla is indisputably one of the richest corporations in the world and has its headquarters located in Austin, whereas ████████████████████████████████████████████████████████████████ ████████████████████████████████████ *See* Langlotz Decl. ¶¶ 4–7. Therefore, the Court should find that factor four (4) disfavors transfer. *See Runkle*, 2016 WL 8672687, at *5.

## V. The Administrative Difficulties Flowing from Court Congestion Weigh Against Transfer

NDCA is significantly busier than WDTX such that "there is an appreciable difference in docket congestion between the two forums," which weighs against transfer. *Parsons v.*

---

[2] In the *Honeywell* case cited by Tesla, unlike here, "no party identified any potential party witnesses in the Western District of Texas" and "the court noted that it was unclear what, if any, relevant and material information the[] individuals" located in the Northern District of Texas had. *In re Honeywell Int'l Inc.*, 2024 WL 302397, at *1, *3 (Fed. Cir. Jan. 26, 2024).

*Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963). Pursuant to the most recent data ending on September 30, 2025, NDCA has 1,092 pending cases per judgeship, whereas WDTX merely has 754 pending cases per judgeship. Marron Decl. Ex. 7. In NDCA, the median time from filing to trial for civil cases is 38.9 months, while it is 32.0 months in this District. *Id.* Moreover, in NDCA there are 2,436 civil cases over 3 years old, representing 17.0% of cases, whereas in WDTX there are only 486 civil cases over 3 years old, representing 10.0% of cases. *Id.* In sum, NDCA is appreciably more congested.

Significantly, Tesla's argument to the contrary relies upon a *2021 Federal Circuit case comparing congestion in WDTX with the **Central** District of California*, not the Northern District of California. *See* Mot. at 12 (quoting *In re Hulu, LLC*, 2021 WL 3278194, at *5 (Fed. Cir. Aug. 2, 2021)); *see also SITO Mobile R&D IP v. Hulu, LLC*, 2021 WL 1166772, at *8 (W.D. Tex. Mar. 24, 2021) (District Court order comparing WDTX with the Central District of California). Plainly, an opinion analyzing congestion in the **Central** District of California in *2021* has no bearing on court congestion in the Northern District of California in 2025 and 2026. And even though Tesla is correct that certain courts state that this factor "is not 'of particular significance'" where the plaintiff "'does not practice the patent,'" Mot. at 12, that does not mean that the Court can ignore this factor altogether, especially in circumstances where, as here, the discrepancy is substantial. *Cf. In re Media Matters for Am.*, 143 F.4th 631, 638 (5th Cir. 2025) ("[W]e have described consideration of the eight factors in mandatory terms."). Accordingly, the Court should find that this factor weighs against transfer.

## VI. WDTX Has a Stronger Local Interest and Thus This Factor Weighs Against Transfer

The local interest in having localized interests decided at home "is a public interest factor. Accordingly, the local-interest inquiry is concerned with the interest of *non-party citizens* in

adjudicating the case." *In re Clarke*, 94 F.4th at 509. The Fifth Circuit elaborates:

> Localized interests are present when the citizens of the forum have a sufficient interest in the controversy to justify burdening them with jury duty. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only.

*In re Chamber of Commerce*, 105 F.4th at 308 (citations and quotation marks omitted). Tesla correctly recites law stating that "[a]s the Federal Circuit has instructed, the focus is on where the events forming the basis for infringement occurred, and not the parties' generalized connections to the forum. The most relevant considerations are therefore where the design, development, and sale of the accused products occurred." Mot. at 11 (citations and quotation marks omitted).

Yet Tesla's Motion ignores other legal factors giving rise to a significant local interest in this District. For example, "the location of a party's principal place of business can also create a strong local interest even when the events giving rise to the action took place elsewhere." *McNew v. C.R. Bard, Inc.*, 2020 WL 759299, at *3 (N.D. Tex. Feb. 14, 2020); *accord Auto-Dril, Inc. v. Pason Sys. USA Corp.*, 2015 WL 12780768, at *2 (W.D. Tex. May 22, 2015) ("The district where a party has its principal place of business typically has a stronger local interest in the adjudication of the case."). Courts also analyze "tax breaks that lead to increased involvement by [a defendant] in WDTX" since "[n]on-party citizens in Texas are ultimately footing the bill or missing out on potential taxes that could be applied to public infrastructure." *S.M.R.*, 756 F. Supp. 3d at 467. And courts further examine the location of "facilities . . . that make the accused products." *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 2009 WL 2634860, at *8 (N.D. Tex. Aug. 26, 2009).

Here, Tesla proudly proclaims that its "global headquarters—and future—are in Texas." Marron Decl. Ex. 6 at 6. Tesla received ███████ tax incentives to move to WDTX, where it

built a campus it "believe[s] is the second-largest building by volume in the world." *Id.*; Marron

Decl. Ex. 4 at 14–15. Tesla also reincorporated in Texas to save $250,000 per year in state fees,

touting "its relationships with the state and local communities," the "strong" "Texas legal regime,"

and its "specialty business court." Marron Decl. Ex. 5; Ex. 6 at 6. WDTX citizens thus have an

acute interest in Tesla's affairs given its Texas global headquarters and its taking advantage of tax

incentives and other benefits to build the second largest building in the world here.

On top of that, WDTX citizens have a great interest in this specific lawsuit. The Tesla

Gigafactory in this District has produced ███████████████████ with the infringing

AutoShift feature. Marron Decl. ¶ 7. ████████████████████████ in WDTX

continue to make vehicles that infringe the patents-in-suit. ██████ Depo. Tr. at 14:12–15:5, 49:9–

13. While it is true that NDCA has "an interest in protecting the work and reputation of the" ████

████████████████████████████████████████ Mot. at 11, WDTX has an interest

in protecting the work of its ████████████████ who make the vehicles, and Tesla has

become so enmeshed in the fabric of the WDTX community—as a result of receiving generous

incentives from that community's tax base and taking advantage of that community's benefits—

that WDTX's interest is comparatively greater.

## CONCLUSION

The Court should deny Tesla's Motion because factors three, four, five, and six weigh

against transfer and factors one and two are neutral. Even if the Court disagrees on certain of these

factors, Tesla still cannot satisfy its burden of showing that "that the marginal gain in convenience

will be *significant*" and "clearly demonstrat[ing] that those marginal gains will *actually* materialize

in the transferee venue." *In re Clarke*, 94 F.4th at 508. Factoring in the "weight" owed to Plaintiff's

"choice of forum," any close call should redound to keeping this action here. *Id.*

Dated: January 9, 2026

Respectfully submitted,

PATRICK | DOERR LLP

By:    */s/ Michael S. Marron*

Michael S. Marron (Admitted *pro hac vice*)
NY State Bar No. 5146352
michael.marron@patrickdoerr.com

Robert Rando (Admitted *pro hac vice*)
NY State Bar No. 2335537
robert.rando@patrickdoerr.com

1501 Broadway, Suite 2310
New York, New York 10036
Telephone: (212) 680-4052

Buether Joe & Counselors, LLC

Christopher M. Joe
State Bar No. 00787770
Chris.Joe@BJCIPLaw.com

1700 Pacific Avenue
Suite 4750
Dallas, Texas 75201
Telephone:    (214) 466-1272
Facsimile:    (214) 635-1828

*Attorneys for Plaintiff Bulletproof Property
Management LLC*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document is being filed electronically in compliance with Local Rule CV-5(a) on January 9, 2026, and is being served via email on all counsel of record.

/s/ Michael S. Marron

Michael S. Marron